UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALBANY MOLECULAR RESEARCH,
INC.,

                          Plaintiff,

            -against-                      1:10-CV-210 (LEK/DRH)

GEORGE C. SCHLOEMER,

                          Defendant.

_____

**MEMORANDUM-DECISION AND ORDER**

      This matter comes before the Court on a Motion to dismiss (Dkt. No. 7) filed on behalf of

Defendant George C. Schloemer.  For the reasons that follow, that Motion is partially granted.

**I.      BACKGROUND**

      On January 8, 2010, Plaintiff Albany Molecular Research, Inc. ("Plaintiff" or "AMRI"), a

Delaware corporation with a principle place of business in Albany, New York, filed this action in

the State of New York Supreme Court.  See Dkt. No. 1-2, Ex. A. ("Complaint").  AMRI's

Complaint asserts four causes of action against Defendant George C. Schloemer ("Defendant" or

"Schloemer"): 1) breach of fiduciary duty; 2) fraudulent omissions; 3) tortious interference with a

contract; and 4) tortious interference with prospective economic relations.  Id. ¶¶ 2, 29-50; Notice of

Removal (Dkt. No. 1) ¶6.  Defendant , a Florida domiciliary, removed the action to the Northern

District of New York on February 24, 2010.  See Notice of Removal.  Jurisdiction is based on

diversity of citizenship and an amount in controversy in excess of $75,000.  Id.  On March 3, 2010,

Defendant filed the instant Motion seeking dismissal of all claims against him or, in the alternative,

to stay the action pending resolution of a related Massachusetts state action.  Dkt. No. 7.

The instant dispute centers around a March 14, 2007 contract (the "contract") between AMRI and Clinical Data Inc., and its successor, PGxHealth ("PGx").  Compl. ¶ 6.  The contract required AMRI to provide research synthesis, analysis, and batch production of Vilazodone, a chemical product that PGx intends to sell as a new, federally-approved drug for the treatment of depression.  Id. ¶¶ 6-7.  According to the Complaint, once the development phase was complete, AMRI expected that it would enter into further agreements with PGx to produce Vilazodone on an ongoing basis.  Id. ¶ 8.  In October 2007, PGx hired Schloemer, a chemist consultant, to assist with the development of Vilazodone; unbeknownst to AMRI, Schloemer was simultaneously consulting ScinoPharm Taiwan Ltd. ("ScinoPharm"), an AMRI competitor.  Id. ¶¶ 10-12.

Schloemer's position with PGx allegedly led  him to visit AMRI facilities, speak with AMRI personnel, and keep apprised of AMRI's progress.  Id. ¶ 13.  According to the Complaint, during these visits and interactions, Schloemer became "privy to AMRI technology and know-how."  Id. Plaintiff alleges that it provided Schloemer access to its facilities and its intellectual property because it "believed that Schloemer was an independent consultant . . . and trusted Schloemer to provide AMRI with honest and unconflicted advice."  Id. ¶ 23.  The Complaint alleges that, instead, Schloemer actively undermined and disparaged AMRI while promoting ScinoPharm to PGx as a more capable, reliable, and cost-effective long-term supplier of Vilazodone.  Id. ¶ 14.  As an example of Schloemer's alleged "undermining" of AMRI, the Complaint recounts an instance in which Schloemer insisted over AMRI's objections that the latter immediately produce full-scale registration batches of Vilazodone despite known deficiencies discovered in early demonstration batches; once the registration batches were complete and exhibited the same deficiencies, Schloemer and PGx "castigated" AMRI for failing to correct its prior error.  Id. ¶ 24.  When the

2

same circumstances faced ScinoPharm, Schloemer allegedly advised ScinoPharm to resolve the issue prior to engaging in full-scale production batches.  Id. ¶ 25.  The Complaint further alleges that Schloemer disparaged almost all aspects of AMRI's capacities (he admitted that AMRI had better analytic support and achieved a better production process than PGx originally called for) "with the intent of inducing PGx to (1) end its development contract with AMRI once the development process was 99 percent complete, and (2) decline to hire AMRI as a producer of Vilazodone and instead hire ScinoPharm" as its sole provider.  Id. ¶ 17.  Plaintiff alleges that Schloemer provided ScinoPharm with technical information produced by AMRI, while simultaneously withholding important technical information in his and PGx's possession that could assist AMRI.  Id. ¶¶ 18, 21.

The Complaint states that Schloemer was under a fiduciary duty to act in good faith, accurately transmit and convey information, and give advice for the benefit of AMRI and PGx and that the above actions were in contravention of that duty.  Id. ¶ 19.  Plaintiff alleges that Schloemer actively worked to induce PGx to breach its contract, and that PGx did so in February 2009 as a direct result of Schloemer's wrongful conduct.  Id. ¶ 22.  Plaintiff accuses Schloemer of using "wrongful means and breach[ing] his fiduciary duty in order to interfere with AMRI's prospective economic relations with PGx and in order to ensure that Schloemer's client, ScinoPharm, would become the sole commercial supplier of Vilazodone instead of AMRI."  Id. ¶ 28.  Plaintiff contends that "but for" this wrongful conduct, AMRI and PGx would have completed their contract and entered into further agreements for the production of Vilazodone.  Id.

On April 16, 2009, PGx filed an action in Massachusetts state court (the "Massachusetts' action), see PGxHealth, LLC v. Albany Molecular Research, Inc., No. 09-1558-BLS-1 (Suffolk Sup.

Ct.), alleging breach of contract by AMRI.[1]  Davis Aff., Ex. A. (Dkt. No. 7-2).  AMRI answered

PGx's state law complaint, and asserted counterclaims against PGx for breach of contract and

breach of good faith and fair dealing, quantum meruit, and unjust enrichment. Id., Ex. B.  PGx filed

a motion for summary judgment in that action on December 18, 2009.  Davis Aff.

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all

[factual] allegations in the complaint as true and draw all inferences in the light most favorable to"

the non-moving party.  In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).  At this

stage, the movant faces a substantial burden, as "the issue is not whether a plaintiff is likely to

prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."

Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotation and citations

omitted)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, __ U.S.__, 129 S.

Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This

plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  Id.  Facial plausibility exists "when the pleaded

---

[1] On a motion to dismiss the Court may take judicial notice of filings and decisions in other cases.  FED. R. EVID. 201(b)(2); Jager v. Mitschele, No. 06-CV-1938, 2010 WL 4722292, at *3 n.2 (E.D.N.Y. Nov. 12, 2010); Canadian St. Regis Band of Mohawk Indians v. New York, 146 F. Supp. 2d 170, 188 (N.D.N.Y. 2001); World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 425 F. Supp. 2d 484, 508 n.16 (S.D.N.Y.2006); see also Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings").

factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Additionally, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. Thus, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. As to a plaintiff's well-pleaded factual allegations, the Court will "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. That determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citation omitted).

## III.   DISCUSSION

### A. Breach of Fiduciary Duty

Plaintiff's first cause of action alleges that "Schloemer owed AMRI a fiduciary duty due to his position of trust and confidence and his role as a consultant on the Vilazodone project," and that he "breached his fiduciary duty by failing to inform AMRI that he was simultaneously working for its competitor, ScinoPharm." Compl. ¶¶ 30, 32. Plaintiff alleges that Defendant further breached his fiduciary duty by "actively undermining AMRI's work for PGx" and "promoting ScinoPharm - instead of AMRI" to PGx. Id. ¶¶ 33-34.

Plaintiff's Complaint states in a conclusory fashion that, "[t]hroughout his engagement as a consultant, Schloemer was under a fiduciary duty to act or to give advice for the benefit of AMRI and PGx in the development of Vilazodone." Compl. ¶ 19. Plaintiff's Complaint alleges that, "[a]s a consultant on the Vilazodone project, Schloemer . . . rendered advice to[] AMRI personnel," and was granted access to confidential information. Compl. ¶ 13, 23. Defendant, who was hired and paid by PGx, not AMRI, moves to dismiss, asserting that he had no fiduciary obligations toward

AMRI as a matter of law.  Mem. in Supp. Mot. to Dismiss (Dkt. No. 7-4) ("Def.'s Mem.") at 5-6.

Where a fiduciary relationship exists, it creates an "affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading [the fiduciary's] clients."  SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 194 (1963) (internal quotations and footnotes omitted).  Under New York law, "[i]n order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct."  Kurtzman v. Bergstol, 40 A.D.3d 588, 590, 835 N.Y.S.2d 644, 646 (2d Dep't 2007); see also Cramer v. Devon, 774 F. Supp. 176, 184 (S.D.N.Y. 1991) (two primary elements of breach of fiduciary duty claim are (1) the existence of a fiduciary relationship between the parties and (2) a breach of the duty flowing from that relationship).  Both the existence of a fiduciary relationship and the breach of obligations arising from such relationship tend to be "fact-specific inquir[ies] reserved for a jury."  Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp., No. 00 Civ. 8688, 2002 WL 362794, *9 (S.D.N.Y. Mar. 6, 2002); Wiener v. Lazard Freres & Co., 672 N.Y.S.2d 8, 14 (1st Dep't 1998) (existence of a fiduciary relationship "is necessarily fact-specific to the particular case"); Cramer, 774 F. Supp. at 185 ("comparison of a party's conduct with the fiduciary standard of care is a question of fact."); but see WIT Holding Corp. v. Klein, 724 N.Y.S.2d 66, 68 (2d Dep't 2001) (court erred in not dismissing a fiduciary claim where complaint alleged only an arm's length commercial relationship).  Thus, Plaintiff argues that its fiduciary breach claim is not subject to dismissal, and it insists that the Complaint alleges sufficient facts to withstand Defendant's Motion.  Resp. Mem. at 6-10.

Plaintiff also rejects Defendant's characterization of their relationship as being of "arm's

length." Resp. at 7-8. AMRI emphasizes that the Complaint alleges that Defendant worked closely

with, and rendered advice to, AMRI personnel and was given access to AMRI's confidential

technology and production methods; AMRI points to an April 1, 2008 Confidentiality Agreement

between it and Chemquest Consulting, of which Defendant is President, as evidence of a close

relationship of trust between the parties.[2] Id.; Carpinello Decl., Ex. A (Dkt. No. 15-1)

("Confidentiality Agreement").

  A fiduciary relationship "is grounded in a higher level of trust than normally present in the

marketplace between those involved in arm's length business transactions." EBC I, Inc. v. Goldman

Sachs & Co., 5 N.Y. 11, 19 (2005) (citation omitted). Thus, "[a] fiduciary relationship 'exists

between two persons when one of them is under a duty to act for or to give advice for the benefit of

another upon matters within the scope of the relation.'" HF Mgmt. Serv. LLC v. Pistone, 818

N.Y.S.2d 40, 42 (1st Dep't 2006) (quoting EBC I, 5 N.Y.3d at 19). But, while "a fiduciary

relationship may exist where one party reposes confidence in another and reasonably relies on the

other's superior expertise or knowledge, [] an arms-length business relationship does not give rise to

a fiduciary obligation." WIT Holding, 724 N.Y.S.2d at 68 (internal citations omitted). Hence,

"'when parties deal at arms length in a commercial transaction, no relation of confidence or trust

sufficient to find the existence of a fiduciary relationship will arise absent extraordinary

circumstances.'" In re Mid-Island Hosp., Inc., 276 F.3d 123, 130 (2d Cir. 2002) (quoting Pan Am.

Corp. v. Delta Air Lines, Inc., 175 B.R. 438, 511 (S.D.N.Y. 1994)).

  Plaintiff has failed to allege such "extraordinary circumstances" as to suggest its relationship

---

  [2] Plaintiff suggests that the Confidentiality Agreement evinces the parties' intent to create a relationship of higher trust between the parties. See Sur-Reply (Dkt. No. 22-1) at 3-4. Plaintiff does not allege breach of the Confidentiality Agreement.

with Defendant, a consultant hired and paid by another company, was one of fiduciary trust and

obligations.  See Ne. Gen. Corp. v. Wellington Adver., Inc., 82 N.Y.2d 158, 161 (1993) ("If the

parties find themselves or place themselves in the milieu of the 'workaday' mundane marketplace,

and if they do not create their own relationship of higher trust, courts should not ordinarily transport

them to the higher realm of relationship and fashion the stricter duty for them").  The Court rejects

Plaintiff's contention that by providing Defendant access to its confidential information, fiduciary

duties arose.

　　　Plaintiff mistakenly relies upon HF Mgmt. Serv., 818 N.Y.S.2d 40, as support for its

argument.  In that case, the majority actually found the opposite result, i.e. that where no fiduciary

obligation existed between parties involved in arm's length commercial activities, no fiduciary

relationship was formed between the plaintiff and its adversary's agent simply because that agent

gained access to plaintiff's confidential information in the course of the parties' dealings.  Id.  Thus,

the fact that AMRI shared confidential information with Defendant is insufficient to create a

fiduciary duty.

　　　The existence of the Confidentiality Agreement adds nothing to the analysis.  It relevantly

states,

> This Agreement constitutes the entire agreement between AMRI and CHEMQUEST relating
> to confidential treatment and use of Confidential Information, . . . and *no obligation of any kind*
> *relating thereto is assumed by or implied against either party hereto except those obligations*
> *stated herein.*

Confidentiality Agreement ¶ 10 (emphasis added).  No fiduciary obligation is expressly stated

elsewhere in that Agreement.  Id.  Nor does the Confidentiality Agreement "describe[] or give[

Schloemer] the function of an agent, partner or coventurer."  Ne. Gen., 82 N.Y.2d at 162.  While not

dispositive of the absence of a fiduciary duty, Frydman & Co. v. Credit Suisse First Boston Corp.,

708 N.Y.S.2d 77, 79 (1st Dep't 2000) (clause in an agreement "providing that legal obligations would not arise 'by virtue of this agreement' except as specifically agreed to therein . . . does not preclude the finding of a fiduciary duty" where such duty arises outside that agreement), this provision limits any value that the Confidentiality Agreement has in suggesting such a duty exists. See CIVC Bank and Trust Co. v. Credit Lyonnais, 704 N.Y.S.2d 574 (1st Dep't 2000) (dismissal of fiduciary breach claim was proper where the parties' contracts represented that they were not in a fiduciary relationship).

        Also unavailing is Plaintiff's reliance on EBC I, 5 N.Y.3d 11, for the proposition that where a party reposes confidence in another party's advice, a fiduciary relationship may form.  In that case, the court found that an underwriter may owe a fiduciary duty to one of its clients to which it rendered expert advice, where the complaint alleged an advisory relationship independent from the underwriting agreement.  Id. at 20-22.  It strains the Court's credulity, however, to suggest that the EBC I court's reasoning should apply where the advisor and complaining party have no agreement. Importantly, in parsing the plaintiff's complaint for sufficiency, the EBC I court noted,

> plaintiff alleges eToys was induced to and did repose confidence in Goldman Sachs' knowledge and expertise to advise it . . .  and engage in honest dealings with eToys' best interest in mind. Essentially, according to the complaint, *eToys hired Goldman Sachs to give it advice for the benefit of the company*, and Goldman Sachs thereby had a fiduciary obligation to disclose any conflict of interest.

Id. (emphasis added).

        In contrast, AMRI did not hire Defendant to provide expert advice; it did not hire Defendant at all.  Accepting the facts alleged, the Complaint does not allow the Court to find or reasonably infer a fiduciary relationship existed. Defendant was hired and paid by PGx; he was an agent of PGx.  PGx and AMRI were involved in a typical marketplace transaction.  No fiduciary duty existed

9

between them, nor between AMRI and PGx's agents.  Where parties stand at arm's length, dismissal of fiduciary breach claims is entirely appropriate.  See, e.g., WIT Holding, 724 N.Y.S.2d at 68. Accordingly, Plaintiff's first cause of action is dismissed.

## B. Fraudulent Omissions

Plaintiff's second cause of action for fraudulent omissions alleges that "the nature of the relationship between AMRI and Schloemer" engendered in the latter, a duty to disclose his relationship with ScinoPharm and his work on its behalf.  Compl. ¶ 37.  Defendant's failure to disclose that information, Plaintiff alleges, led AMRI to grant Defendant access to its own confidential data and intellectual property, which Defendant used for the benefit of ScinoPharm and to the detriment of AMRI.  Id. ¶¶ 39-40.  Defendant seeks dismissal of this claim, arguing that he was under no duty to disclose anything to AMRI.

In New York, a party is generally not liable for fraud by omission absent a fiduciary duty. See SNS Bank, N.V. v. Citibank, N.A. 777 N.Y.S.2d 62 (1st Dep't 2004) ("an omission does not constitute fraud unless there is a fiduciary relationship between the parties"); Frigitemp Corp. v. Fin. Dynamics Fund, Inc., 524 F.2d 275, 283 (2d Cir. 1975) (citing Wood v. Amory, 105 N.Y. 278, 281-82 (1887)).  A duty to disclose may, in certain circumstances, also arise where "defendant knew that the plaintiff was acting under a mistaken belief with respect to a material fact."  Frigitemp, 524 F.2d at 283 (citation omitted).

As discussed above, the Complaint fails to plausibly allege a fiduciary relationship between the parties.  It does allege that "[n]either PGX nor Schloemer informed AMRI that Schloemer was also acting as a consultant to ScinoPharm," Compl. ¶ 12, but fails to allege that Schloemer *knew* AMRI was acting under a mistaken belief as to that fact.  Having failed to plausibly allege

10

Defendant had a duty to disclose, Plaintiff's second cause of action is dismissed.

### C.  Tortious Interference with Contract

Plaintiff's third claim, tortious interference with contract, alleges Defendant's bad faith in advancing his own interests and those of ScinoPharm at AMRI's expense, insofar as he actively sought to undermine AMRI and induce PGx to breach its contract with AMRI or render performance of that contract impossible.  Compl. ¶¶ 43-44.  "In order to state a cause of action for tortious interference with contractual relations plaintiffs must show that defendants intentionally and through improper means induced the breach of a contract between plaintiff and a third party."  WFB Telecommunications v. NYNEX Corp., 590 N.Y.S.2d 460, 461 (1st Dep't 1992).  Thus, the elements of the claim are: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff."  Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993) (citing Israel v. Wood Dolson Co., 1 N.Y.2d 116, 120 (1956)); see also White Plains Coat & Apron Co., Inc. v. Cintas Corp., 8 N.Y.3d 422, 426 (2007).

Defendant argues that Plaintiff's tortious interference with contractual relations fails as a matter of law because, as a consultant for PGx, he "'cannot be held liable for inducing in the course of [his] agency and advice the breach of contract, if there be one, by [his] principle.'"  Def.'s Mem. at 9 (quoting Shaw v. Merrick, 401 N.Y.S.2d 508, 509 (1st Dep't 1978)).  Defendant overstates his protection as a PGx agent.  Under New York law, "'[a]n agent cannot be held liable for inducing his principal to breach a contract with a third person, at least *where he is acting on behalf of his principal and within the scope of his authority*.'"  Pancake v. Frazone, 540 N.Y.S.2d 674, 675 (2d Dep't 1989) (quoting Kartiganer Assoc. v. Town of New Windsor, 485 N.Y.S.2d 782 (2d Dep't

1985).  Plaintiff's Complaint clearly alleges facts from which a factfinder could reasonably infer

that he engaged in the allegedly wrongful conduct while working outside of his authority as an agent

of PGx.  For example, the Complaint alleges that he was simultaneously acting as a consultant to

ScinoPharm, ¶ 12, that he disparaged AMRI in order to promote ScinoPharm, ¶ 14, that he assisted

ScinoPharm by providing it with technical information generated by AMRI and then promoted

ScinoPharm to PGx as the better producer, ¶¶ 17-18, and that he withheld information in his and

PGx's possession that would have assisted AMRI, and in turn, PGx, ¶ 21.  The Complaint also

alleges that Defendant purposefully directed AMRI to produce deficient batches of Vilazodone,

knowing of the deficiency, and knowing that the product would hinder PGx's interests; he took the

opposite course with ScinoPharm.  ¶¶ 24-25.  These factual allegations are sufficient at this stage of

the litigation to state a plausible claim for relief.  They indicate that Defendant was working outside

the scope of his PGx employment, in furtherance of his and/or ScinoPharm's interests, with

knowledge of the AMRI/PGx contract and with the intent to induce PGx to breach that contract.

### D.  Tortious Interference with Prospective Economic Relations

Plaintiff's fourth cause of action tracks the above tortious interference claim, adding that

Defendant's actions were taken with knowledge of PGx and AMRI's intent to engage in an on-

going future business relationship with AMRI becoming PGx's commercial supplier of Vilazodone.

Compl. ¶ 47.  Plaintiff alleges that Defendant acted in bad faith to advance his own interests and

those of ScinoPharm by interfering in the AMRI/PGx business relationship using dishonest, unfair,

and improper means.  Id. ¶ 48.

Under New York law, tortious interference with business relations occurs "where the third

party would have entered into or extended a contractual relationship with plaintiff but for the

intentional and wrongful acts of the defendant." WFB Telecommunications, 590 N.Y.S.2d 460. The plaintiff, in such actions, bears the burden of proving that the defendant's conduct was motivated solely by malice, see M.J. & K. Co., Inc. v. Matthew Bender and Co., Inc., 631 N.Y.S.2d 938, 940 (2d Dep't 1995), "or, failing that level of malice, use[d] dishonest, unfair, or improper means . . . " to damage the relationship between the plaintiff and third party. Goldhirsh Group, Inc. v. Alpert, 107 F3d 105 (2d Cir. 1997); see also White Plains Coat & Apron, 8 N.Y.3d at 426 (noting that a higher level of culpability is required to prove breach of a speculative interest in a prospective relationship than where the claim is for interference with an existing contract).

Plaintiff's Complaint does not allege that Defendant's actions were motivated solely by malice.  In fact, Plaintiff even admits that Defendant informed PGx of certain strengths that distinguished AMRI from other competitors including ScinoPharm.  Compl. ¶ 17.  Plaintiff instead relies upon allegations that Defendant employed dishonest, unfair, or improper means to interfere with a future AMRI/PGx relationship.  At this juncture, the same allegations supporting Plaintiff's third cause of action are sufficient to maintain its tortious interference with business relations claim.

**E. Colorado River Abstention**

Defendant requests that the Court dismiss or stay this action pursuant to the Colorado River[3] abstention doctrine and pending a ruling in the Massachusetts' action.  Def.'s Mem. at 11-14. Abstention under the Colorado River doctrine is rarely appropriate, and "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" Colorado River, 424 U.S. at 817 (quoting McClellan v. Garland, 217 U.S. 268, 282 (1910)).  Nevertheless, where a

---

[3] See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).

related state action is pending, a court should consider the following factors in determining whether

to abstain from its "virtually unflagging obligation," id., to exercise jurisdiction over the federal

matter:

> (1) the assumption of jurisdiction by either court over any res or property,
> (2) the inconvenience of the federal forum,
> (3) the avoidance of piecemeal litigation, and
> (4) the order in which jurisdiction was obtained.
>                * * *
> (5) whether state or federal law supplies the rule of decision, and
> (6) whether the state court proceeding will adequately protect the rights of the party seeking to
>     invoke federal jurisdiction.

Burnett v. Physician's Online, Inc. 99 F.3d 72, 76 (2d Cir. 1996) (citing Bethlehem Contracting

Co., v. Lehrer/McGovern, Inc., 800 F.2d 325, 327 (2d Cir. 1986)); see Colorado River, 424 U.S.

800 (1976); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983).  A district

court must perform a "careful balancing of the important factors as the apply in a given case, with

the balance heavily weighted in favor of the exercise of jurisdiction." Cone, 460 U.S. at 16 (1983).

      Prior to weighing these factors, a district court must first ensure that a "concurrent" or

"parallel" state action exists.  Town of Charlton v. Selective Ins. Co. of Am., No. 1:09-CV-00333,

2010 WL 457117, at *3 (N.D.N.Y. 2010) (Kahn, J.) (citing Dittmer v. Cnty. of Suffolk, 146 F.3d

113, 118 (2d Cir. 1998)).  The state and federal actions must involve more than "some overlap of

subject matter."  Alliance of Am. Insurers v. Cuomo, 854 F.2d 591, 603 (2d Cir. 1988).  Rather,

they must be "essentially the same; that is, there is an identity of parties, and the issues and relief

sought are the same."  Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17, 22 (2d Cir.

1997).  "Similarity of parties is not the same as identity of parties."  Am. Insurers, 854 F.2d at 603;

but see De Cisneros v. Younger, 871 F.2d 305 (2d Cir.1989) (abstention may be appropriate despite

non-identical parties where the issues to be decided are the same).

The instant action fails this threshold requirement.  The parties in the federal and state actions are not identical: the instant action is between AMRI and Schloemer; the Massachusetts' action is between PGx and AMRI.  Furthermore, while there is "some overlap of subject matter." Am. Insurers, 854 F.2d at 603, the issues in the two actions are not the same, as the Massachusetts' action raises the question of whether PGx wrongfully breached its contract, but will not adjudicate Schloemer's allegedly tortious conduct if such breach if it is found.  Moreover, the prospective business relationship that forms the basis of Plaintiff's fourth cause of action is not at issue in the state action.  Thus, whatever result obtains in that action will not resolve the issues here.

Finally, even if the Court deemed the Massachusetts' action "concurrent," abstention would be inappropriate.  Neither this Court nor the Massachusetts' court presently has jurisdiction over any res or property.  The Northern District of New York is not inconvenient, and in fact, AMRI moved to dismiss the Massachusetts' action on the grounds of *forum non conveniens*, arguing that New York is a more appropriate forum.  Davis Aff. Ex. D.  State, rather than federal law, supplies the rule of decision, but in this case, that consideration does not favor abstention because New York law controls in both actions.  See id. at 6.  This Court is as equipped as a foreign state's court in adjudicating the New York state laws at issue.  In determining "whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction," Burnett, 99 F.3d at 76, the Court is confident that the Massachusetts' court will do so, but notes that it was Schloemer, not AMRI, who invoked federal jurisdiction.  See Notice of Removal.  Defendant, after choosing to remove to federal court, cannot now reasonably assert that the federal court should abstain from exercising jurisdiction over the action.

The Massachusetts' court exercised jurisdiction first, and a summary judgment motion is

15

pending before it as to PGx's alleged breach.  The Court finds that fact of limited weight given that the adjudication of that motion will leave unresolved numerous issues presently before this Court. Thus, the only viable basis for abstention is the avoidance of piecemeal litigation.  The Court recognizes that, should the Massachusett's court find that PGx was not in breach, Plaintiff's third cause of action in this case may fail under the doctrine of collateral estoppel.  As noted, however, that result would not affect Plaintiff's fourth cause of action.  Given the heavy presumption in favor of exercising jurisdiction, <u>Cone</u>, 460 U.S. at 16, the Court finds this concern insufficient to justify abstention.

**IV.      CONCLUSION**

Accordingly, it is hereby

**ORDERED**, Defendant's Motion to dismiss (Dkt. No. 7) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that Plaintiff's claims for breach of fiduciary duty and fraudulent omission are **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:   December 14, 2010
              Albany, New York

Lawrence E. Kahn
U.S. District Judge